No. 26-1714

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NATIONAL PARKS CONSERVATION ASSOCIATION; AMERICAN
ASSOCIATION FOR STATE AND LOCAL HISTORY; ASSOCIATION OF
NATIONAL PARK RANGERS; COALITION TO PROTECT AMERICA'S
NATIONAL PARKS; SOCIETY FOR EXPERIENTIAL GRAPHIC
DESIGNERS; and UNION OF CONCERNED SCIENTISTS,
*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in
his official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; and
JESSICA BOWRON, in her official Capacity as the Official Exercising the Delegated
Authority of the Director,
*Defendants-Appellants*

Appeal from the United States District Court for the District of Massachusetts
No. 1:26-cv-10877 (Hon. Angel Kelley)

**FEDERAL DEFENDANTS/APPELLANTS' EMERGENCY MOTION
FOR STAY PENDING APPEAL OR, ALTERNATIVELY, AN
ADMINISTRATIVE STAY
RELIEF REQUESTED BY JUNE 25, 2026**

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*
ROBERT J. LUNDMAN
CHRISTOPHER C. HAIR
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 717-7067
robert.stander@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES ...........................................................................ii

INTRODUCTION AND RELIEF REQUESTED ............................................. 1

BACKGROUND............................................................................................ 3

     A.    Factual and Legal Background ........................................................ 3

     B.    Procedural history ......................................................................... 6

ARGUMENT.................................................................................................. 7

I.    The government is likely to prevail on appeal. ............................................. 8

     A.    The Secretary's Order is not reviewable under the APA. .................... 8

     B.    The Order complies with the law...................................................... 15

II.    The injunction's overbreadth, the balance of the harms, and the equities strongly favor a stay.............................................................. 17

CONCLUSION............................................................................................... 20

CERTIFICATE OF COMPLIANCE .............................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Am. Hosp. Ass'n v. N.L.R.B.,*
499 U.S. 606 (1991) ..................................................................................16

*Bennett v. Spear,*
520 U.S. 154 (1997) .............................................................................. 9, 10

*Biden v. Texas,*
597 U.S. 785 (2022) ..................................................................................11

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ..................................................................................18

*Charlesbank Equity Fund II* v. *Blinds To Go, Inc.,*
370 F.3d 151 (1st Cir. 2004) ....................................................................18

*Chemours Co. FC, LLC v. U.S. Env't Prot. Agency,*
109 F.4th 179 (3d Cir. 2024) ....................................................................11

*Clark v. Cmty. for Creative Non-Violence,*
468 U.S. 288 (1984) ..................................................................................14

*Common Cause Rhode Island v. Gorbea,*
970 F.3d 11 (1st Cir. 2020) .........................................................................7

*Davis v. Latschar,*
202 F.3d 359 (D.C. Cir. 2000).................................................................14

*DHS v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020)......................................................................................17

*Elrod v. Burns,*
  427 U.S. 347 (1976) ....................................................................................20

*FDA v. Alliance for Hippocratic Med.,*
  602 U.S. 367 (2024) ......................................................................................7

*Heckler v. Chaney,*
  470 U.S. 821 (1985) ....................................................................................13

*Indep. Equip. Dealers Ass'n v. U.S. Env't Prot. Agency,*
  372 F.3d 420 (D.C. Cir. 2004) ....................................................................8

*INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.,*
  510 U.S. 1301 (1993) ..................................................................................19

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) .............................................................................8, 9, 12

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget,*
  775 F. Supp. 3d 100 (D.D.C. 2025) ..........................................................11

*Nat'l Min. Ass'n v. McCarthy,*
  758 F.3d 243 (D.C. Cir. 2014) ..................................................................11

*Nken v. Holder,*
  556 U.S. 418 (2009) ......................................................................................7

*Organized Fishermen of Fla. v. Hodel,*
  775 F.2d 1544 (11th Cir. 1985) ................................................................14

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California,*
  475 U.S. 1 (1986)........................................................................................15

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) ............................................................................15, 19, 20

*Plunkett v. Castro*,
67 F. Supp. 3d 1 (D.D.C. 2014) ........................................................................17

*Ramos v. Att'y Gen. United States*,
No. 25-2946, 2025 WL 2950133 (3d Cir. Oct. 17, 2025) ..............................19

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) .........................................................................................19

*Shurtleff v. City of Bos., Mass.*,
596 U.S. 243 (2022) .........................................................................................20

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .........................................................................................18

*Union of Concerned Scientists v. Wheeler*,
954 F.3d 11 (1st Cir. 2020) .............................................................................13

*U.S Army Corps of Engineers v. Hawkes Co.*,
578 U.S. 590 (2016) .........................................................................................11

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
714 F.3d 186 (4th Cir. 2013) .............................................................................8

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
576 U.S. 200 (2015) .........................................................................................19

*Winter v. NRDC*,
555 U.S. 7 (2008) .............................................................................................18

# Statutes and Court Rules

5 U.S.C. § 551(13) ..........................................................................................8

5 U.S.C. § 701 *et seq.* .....................................................................................6

5 U.S.C. § 701(a)(2) .......................................................................................13

5 U.S.C. § 702 ..................................................................................................8

5 U.S.C. § 704 .............................................................................................. 8, 9

5 U.S.C. § 705 ..................................................................................................6

54 U.S.C. § 100101(a) ...........................................................................3, 10, 14

54 U.S.C. § 100302(a)(3) ...............................................................................19

54 U.S.C. § 100701 .........................................................................................10

54 U.S.C. § 100702 ..................................................................................... 3, 10

54 U.S.C. § 100801(1)(A) ................................................................................4

54 U.S.C. § 100801(2) ......................................................................................4

54 U.S.C. § 100802 ................................................................................3, 10, 13

# Other Authorities

Executive Order 14253.................................................................................. 1, 4

Robert M. Pirsig, *Zen and the Art of Motorcycle Maintenance* (1974) .......................................13

**INTRODUCTION AND RELIEF REQUESTED**

This political dispute over government speech in national parks does not belong in federal court. The National Park Service (NPS) posts signs and other materials throughout our national parks that speak to the public about how they might interpret, learn, and feel about America's scenery, monuments, and historic buildings. On March 27, 2025, President Trump issued Executive Order 14253 directing the Department of the Interior to review and restore these interpretive materials that were improperly altered or removed by the prior administration, and to ensure that, going forward, no such materials inappropriately disparage Americans, past or living. On May 20, 2025, the Secretary implemented the Executive Order through Secretary's Order 3431, directing subordinates to undertake the reviews.

Plaintiffs waited nearly *nine months* to challenge the Secretary's Order, and one month more before seeking a preliminary injunction. Despite lacking diligence, they have convinced the district court to oversee and direct the content of interpretive materials at national parks. The nationwide preliminary injunction requires NPS to undo changes it has made throughout the national parks and to stop making further changes responsive to the Secretary's Order. The injunction dictates what the government can and cannot say to the public in national parks on issues of obvious public importance, such as whether our Nation's Founders should be disparaged as self-serving colonizers or praised as pioneers of constitutional democracy. This is plain judicial overreach that warrants a stay pending appeal.

As to the likelihood of success on the merits, the Secretary's Order is not reviewable under the Administrative Procedure Act (APA) because the order is neither agency action, nor is it final. Judicial review of the challenged conduct would insert the courts into day-to-day decisions on what NPS can and cannot say. The Secretary also acted well within his broad and unreviewable discretion under the three relevant statutes. The government is therefore likely to succeed on appeal.

The balance of the equities also favors a stay. The order has a direct and irreparable impact on government speech. The government also faces incredible burdens imposed by the order requiring NPS to undo approximately a year of actions in 21 days. Complying with the injunction will divert resources from essential NPS services and programming. By contrast, Plaintiffs' alleged harm is insignificant—they would like to see different signs when they visit national parks pending the final resolution of this case. Finally, a stay serves the public interest by ensuring the continuation of NPS services and protecting government speech.

Federal Defendants respectfully request a ruling by June 25, 2026, which is needed to allow time for the government to seek relief from the Supreme Court while preparing to comply with the injunction's arbitrary 21-day deadline. Alternatively, the Court should grant an immediate administrative stay to allow time for review.

# BACKGROUND

## A. Factual and Legal Background

The National Park Service (NPS) is the subcomponent within the Department of Interior (DOI) that oversees the National Park System. Bowron Decl. ¶¶ 1, 3, 5 (App'x 65).[1] The System comprises 433 units located throughout the country. *Id.* ¶ 4. These units are staggeringly different, ranging from massive national parks like Yellowstone to historic sites and natural areas like New York's Gateway National Recreation Area.

The Organic Act of 1916, National Parks Omnibus Management Act, and the National Park Service Centennial Act all govern NPS. Their relevant provisions establish only high-level direction, leaving NPS with significant discretion to manage its 433 units. The Organic Act directs the Secretary to "promote and regulate the use of the National Park System … to conserve the scenery, natural and historic objects, and wild life … and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a). The 1998 Omnibus Management Act requires the Secretary to "ensure that management of System units is enhanced by the availability and utilization of a broad program of the highest quality science and information." *Id.* § 100702.

---

[1] Relevant excerpts from the district court record are included in the attached appendix.

The 2016 Centennial Act further requires the Secretary to "ensure that management of [National Park] System units and related areas is enhanced by the availability and use of a broad program of the highest quality interpretation and education." *Id.* § 100802. "Interpretation" is defined as "providing opportunities for people to form intellectual and emotional connections to gain awareness, appreciation, and understanding of the resources of the [National Park] System." *Id.* § 100801(1)(A). "Education" means "enhancing public awareness, understanding, and appreciation of [Park resources] through learner-centered, place-based materials, programs, and activities that achieve specific learning objectives as identified in a curriculum." *Id.* § 100801(2).

NPS accordingly offers "educational and interpretive information" to visitors of NPS units. Bowron Decl. ¶ 6 (App'x 67). As of 2025, NPS manages over 700 visitor centers and exhibits, over 1,500 audio/visual exhibits, and over 8,000 interpretive waysides. *Id.* ¶ 10. NPS produced around 3,100 publications last year and distributed around 26,300,000 copies. *Id.* NPS regularly updates its educational and interpretive information to ensure that it remains accurate, relevant, and useable. *Id.* ¶ 11.

On March 27, 2025, President Trump issued Executive Order 14253 (EO), directing the Secretary to determine whether "public monuments, memorials, statues, markers, or similar properties" had been improperly altered since January 2020 and to restore any such properties. *Id.* § 4. The Secretary would also ensure that these properties do not "inappropriately disparage Americans past or living." *Id.* The EO

4

makes clear that this administration's policy to, consistent with applicable law, use federal sites to "remind Americans of our extraordinary heritage." *Id.* § 1.

On May 20, 2025, the Secretary of Interior issued Secretary's Order 3431 (the "Order" or SO), titled "Restoring Truth and Sanity to American History," which "implements provisions of" the EO and directs reviews and restoration called for in the EO before the Nation's 250th Anniversary. The Order also explains that it is designed to improve "the internal management" of the agency and creates no legally enforceable rights.

In June 2025, NPS leadership instructed NPS units to conduct reviews and to post signage consistent with the Order. Bowron Decl. ¶¶ 17-18 (App'x 70). A review team started such work in July 2025. *Id.* ¶ 20. Case-by-case review "tak[es] into account the context of the submission, the mission and interpretive purpose of the [NPS] Unit or specified exhibit, and any relevant legal or policy considerations." *Id.* NPS has acted on interpretive materials as part of both its review and its ordinary maintenance and has found that many of the materials conform with the Order. *Id.* ¶¶ 20-26. After NPS identifies content that it wants to change, it may revise the content, temporarily cover or remove it, or permanently remove it. *Id.* ¶ 24. Permanent removal is generally due to multiple factors, such as the planned retirement date of the material. *Id.* And because NPS's review of interpretive content never really ends, a "permanent" removal is not truly permanent.

### B.    Procedural history

Plaintiffs are advocacy organizations interested in the National Park System. Nine months after the Order issued, in February 2026, Plaintiffs challenged it under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and five other statutes. A month later, Plaintiffs amended their complaint and moved for a 5 U.S.C. § 705 stay of the Order or a preliminary injunction on three of their claims against NPS under the Centennial Act, the Organic Act, and the Omnibus Management Act. App'x 01. They asked the court to order the government to restore all park sites to how they existed before the Order and to prohibit further alterations to interpretive materials pending this litigation. The government opposed and moved to dismiss the complaint.

The district court denied the motion to dismiss on June 4, 2026. App'x 188. The court issued a sweeping preliminary injunction on June 12, 2026. In the court's view, the Order "seek[s] to rewrite the Nation's history with a white-out pen," and that "telling the full truths of our shared story helps our Nation heal from past wrongs." App'x 279. Finding it "equally important that our shared history be honestly told and fully restored by the 250th Anniversary to properly honor the remarkable achievements of the United States," the court gave NPS a mere 21 days to restore to their pre-Order status all interpretive materials that were altered or removed under the Order. *Id.*

The government moved for a stay pending appeal in district court on June 15, 2026, asking for a ruling by June 17, 2026. The court denied the motion on June 18, 2026. App'x 347.

**ARGUMENT**

A stay pending appeal is warranted and essential. Each of the stay factors is met: (1) the government is likely to succeed on the merits; (2) it will be irreparably injured absent a stay; (3) the stay will cause no meaningful injury to the plaintiffs; and (4) the public interest overwhelmingly favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020).

The government is likely to prevail on appeal because the conduct at issue is neither reviewable agency action nor final agency action under the APA, as the Third Circuit ruled today in a similar case challenging the removal of exhibits in Independence National Park. *City of Philadelphia v. Dep't of Interior*, No. 26-1348, slip op. at 26-33 (3d Cir. June 18, 2026) (vacating preliminary injunction requiring NPS to re-install exhibits and remanding for dismissal of APA claims) (App'x 305-40). Even if it were, the broad delegations under the relevant statutes commit any decisions to agency discretion, and in any event the Order is plainly consistent with those broad delegations. The remaining stay factors also strongly support a stay. The government will be irreparably harmed pending appeal. The district court has inappropriately waded into a political dispute, directly interfering with the government's ability to speak on its own property. Within 21 days, the government must reverse the content decisions it made in the past year. This task is essentially impossible and will require NPS to divert extraordinary resources. Against those substantial harms, Plaintiffs' injuries are weak. Their claimed organizational injuries—the costs of advocacy campaigns against the Order—are precisely the kind that fail to establish harm sufficient to support standing in *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024).

## I. The government is likely to prevail on appeal.

### A. The Secretary's Order is not reviewable under the APA.

The district court crucially erred by finding the Order was reviewable. App'x 205-09. Judicial review is limited to agency action, 5 U.S.C. § 702, that is final, *id.* § 704. The Order is neither. And NPS's choice of what to say to the public about its sites is committed to agency discretion by law.

#### 1. The Secretary's Order is not agency action.

APA review is limited to the review of "agency action." 5 U.S.C. § 702. "[T]he APA's definition of agency action focuses on an agency's *determination* of rights and obligations, whether by rule, order, license, sanction, relief, or similar action." *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citation omitted); *see also* 5 U.S.C. § 551(13) (defining "agency action"). The Order (despite its name) is not an "order" under 5 U.S.C. § 551(13) (or any other listed example) because it does not *determine* anything; decisions on signs and other materials only occur after a site-specific review. *See City of Philadelphia*, slip op. at 28 (holding that NPS's removal of exhibits "does not satisfy any of the definitions" in § 551(13)) (App'x 331). The APA does not authorize "general judicial review of the [agency's] day-to-day operations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990), or cover "all conduct such as, for example, constructing a building, operating a program, or performing a contract." *Vill. of Bald Head Island*, 714 F.3d at 193. The term "agency action" is "not so all-encompassing as to authorize us to exercise judicial review over everything done by an

8

administrative agency." *Indep. Equip. Dealers Ass'n v. U.S. Env't Prot. Agency*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (cleaned up).

NPS routinely revises, adds, and removes interpretive material as part of the ordinary business of managing national parks. Subjecting each of these decisions to APA review would grind park management to a halt. Plaintiffs would challenge changes to Park signs, pamphlets, or interpretive displays. Some Plaintiffs like these would complain about the removal of a sign addressing climate change at Fort Sumter and Fort Moultrie National Historical Park. App'x 231-32. Other plaintiffs would complain about the decision to put up the same sign. The APA does not authorize this sort of impossible judicial review; it cannot be squared with the Supreme Court's admonition against "general judicial review" of agency operations. *Lujan*, 497 U.S. at 899. The district court here has opened the door to never-ending litigation about NPS's government speech.

### 2. The Secretary's Order is not final.

Unless another statute expressly provides for judicial review, review under the APA is confined to review of "final agency action." 5 U.S.C. § 704. Agency action is "final" when (1) the agency's decision-making process is consummated and (2) when legal rights and obligations are fixed. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The Order satisfies neither requirement.

First, the Order starts a review process; it is not the consummation of that decisionmaking process. The Order provides internal management direction to subordinates within Interior to conduct a review of interpretive materials for consistency with the Executive Order and to remove or replace such content if found

inconsistent. Bowron Decl. ¶¶ 17-24 (App'x 70). While it provides standards for subordinates to consider in that review, those standards involve judgment calls in their implementation. For example, the subordinates must determine whether particular material "*inappropriately* disparages Americans past or living." SO § 5 (emphasis added). The resulting review involves "case-by-case" analysis including consideration of the specific context of the interpretive material as well as "any relevant legal or policy considerations." Bowron Decl. ¶ 20. Thus, the Order does not impose categorical rules or make final determinations about particular materials, and it acknowledges that "[t]o the extent there is any inconsistency between the provisions of this Order and any Federal laws or regulations, the laws or regulations will control." SO § 7. Thus, the Order is not the "'consummation' of the agency's decisionmaking process," *Bennett*, 520 U.S. at 178 (citation omitted), but rather directs the start of a process, with agency employees considering the guidance, while complying with existing laws and regulations. *See City of Philadelphia*, slip op. at 32 (disagreeing that an "exhibit removal six months ago was NPS's last word on the matter") (App'x 336).

Second, the Order does not determine any rights or obligations or result in any cognizable legal consequences. The Order determined no rights or obligations of Plaintiffs—because Plaintiffs have no rights or obligations to view particular interpretive materials at national parks. The Organic Act broadly requires the Secretary to manage national parks to "conserve" and "provide for the enjoyment of" the scenery, natural and historic objects, and wildlife therein. 54 U.S.C. § 100101(a). The Centennial Act requires the Secretary to enhance management through a program of "the highest quality interpretation and education." *Id.* § 100802. And the Omnibus Management Act

directs the Secretary to provide "state-of-the-art management, protection, and interpretation of, and research on, the resources" in the park site and to utilize "the highest quality science and information." *Id.* §§ 100701-100702. None of these statutes confer any private rights on Plaintiffs.

Nor does the Secretary's high-level curatorial direction to subordinate staff directing them to conduct case-by-case reviews lead to any "direct and appreciable legal consequences." *Chemours Co. FC, LLC v. EPA*, 109 F.4th 179, 184 (3d Cir. 2024). The district court engaged in no real analysis on this point, App'x 206-07, cursorily stating it suffices that the order binds Interior personnel, and citing *Biden v. Texas*, 597 U.S. 785, 793, 808-09 (2022). But the challenged memorandum in *Biden* had legal consequences, not just because it bound agency staff, but because it terminated an immigration program with legal consequences for certain aliens. The legal consequences were those for third parties, not the everyday consequence that government employees must follow their boss's instructions. *See also U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 598-99 (2016) (explaining that there was a legal effect on third parties because the agency action "create[ed] a five-year safe harbor" or denied one for the third-party property owner).

A policy directive's internally binding nature does not alone create legal consequences permitting judicial review under the APA. Rather, judicial review is available only when the agency's ultimate actions affect a third party's rights or obligations and results in legal consequences for third parties. *See, e.g., Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) ("The most important factor concerns the actual legal effect (or lack thereof) of the agency action in question on regulated

11

entities."); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 775 F. Supp. 3d 100, 124 (D.D.C. 2025) ("the OMB Pause Memorandum issued a mandatory command to other federal agencies that produced legal consequences for Plaintiffs and others"). A visitor observing a sign at the California Golden Gate National Park describing NPS's historical role in eugenics movements and indigenous history is not subject to any legal obligation or benefit resulting from the sign. A visitor who arrives after that sign's removal is in the same legal position. The sign's presence or absence has no legal consequences whatsoever. That is fatal to APA review of a decision to add, remove, or revise the sign.

The district court's erroneous finding of final agency action also led to another error—its flawed conclusion (App'x 241-57) that the Order is likely arbitrary and capricious. The court asserted that the Secretary had failed to provide sufficient reasoning, failed to engage with alleged reliance interests, and failed to consider certain factors. But the Secretary was providing broad direction to his subordinates to use in their later "case-by-case" decisions about interpretive materials. The agency then considers any relevant statutory factors in making those individualized decisions about specific materials at particular parks. And if those decisions are judicially reviewable at all, that review must occur in "the normal, mode of operation" for courts, by taking them "case-by-case." *Lujan*, 497 U.S. at 894. Because Plaintiffs did not challenge final actions, the district court's discussion of the alleged arbitrary nature of the agency's decision reflects an abstract disagreement about policy, detached from any specific removal that has actually occurred. And nothing in the statutes that govern NPS or in the APA required NPS to attempt to define at the outset—for 433 park units and

12

thousands of signs, exhibits, etc.—exactly how that more detailed review would play out.

### 3. NPS's review is committed to agency discretion.

Judicial review is unavailable under the APA if the claim involves "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "Such a commitment exists" in two circumstances: (i) "when the agency action is of a kind traditionally regarded as committed to agency discretion" or (ii) "when the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Both circumstances apply here.

The statutes delegate obviously broad and unreviewable discretion to the Secretary. He is to "enhance" the national parks with a "program of the highest quality interpretation." 54 U.S.C. § 100802 (Centennial Act). The "highest quality" is an aspiration for artists, not a standard of law for courts. *See* Robert M. Pirsig, *Zen and the Art of Motorcycle Maintenance*, 239 (1974) ("Quality is the goal of art."). None of the three generically worded statutes the district court invoked comes anywhere close to providing a judicially manageable standard for adjudicating the government's interpretive ideas about how best to enjoy the scenery of America.

The Secretary has "especially broad discretion on how to implement his statutory mandate" under the Organic Act. *Davis v. Latschar*, 202 F.3d 359, 365 (D.C. Cir. 2000); *see also Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (courts should not "replace the Park Service as the manager of the Nation's parks or endow the

judiciary with the competence to judge how much protection of park lands is wise"); *Organized Fishermen of Fla. v. Hodel*, 775 F.2d 1544, 1550 (11th Cir. 1985) ("The task of weighing the competing uses of federal property has been delegated by Congress to the Secretary of the Interior."). The Organic Act directs the Secretary to "promote and regulate the use of" National Park System in conformity with the purpose "to conserve the scenery, natural and historic objects." 54 U.S.C. § 100101(a). The district court plainly erred (App'x 259-63) in interpreting that direction to conserve the scenery and natural and historic objects—i.e., tangible park *resources*—to require the government to present interpretive materials about climate change or pollution. A duty to manage the parks for the purposes of conservation does not sub silentio require NPS to campaign for broad changes to environmental laws and policy.

Separately, interpretive signage is government speech that reflects judgments about visitor experience, educational framing, narrative scope, and the meaning of America's history and resources—paradigmatic managerial choices traditionally committed to agency discretion and subject to the government's "right to speak for itself." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467, 470 (2009) (cleaned up). Thus, neither the Centennial Act nor the Omnibus Act require NPS to present particular narratives or maintain specific signage.

Again, if Congress had wanted to impose a duty on the government to convey specific messages, it would have done so in clear language. It did not. For that reason, to justify its injunction, the district court attempts to weave together pieces of statutory language and various policy statements to create an alleged "mandate that park sites reflect the voices of all Americans." App'x 266. But no such mandate exists, nor could

14

it in a Nation of over 320 million citizens with wildly disparate opinions and perspectives. "[A]ll speech inherently involves choices of what to say and what to leave unsaid." *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 11 (1986). Here, Congress reasonably left the Executive Branch broad discretion about how the government can speak at national parks.

This absence of judicially manageable standards is fatal to every theory Plaintiffs advance on the merits. Without a substantive standard against which to evaluate the Secretary's interpretive direction, a court conducting arbitrary and capricious review would have to substitute its own judgment about what should be displayed at a federal site—which is precisely the kind of policy determination that § 701(a)(2) reserves to the Secretary.

### B. The Order complies with the law.

Assuming the Order is reviewable, the government is still likely to succeed on appeal because the Order is neither contrary to law nor arbitrary and capricious.

The Order is not contrary to law. Because Plaintiffs challenge the facial validity of the Order—and not a specific application of it—they must show that the Secretary Order is contrary to law "in all its applications." *Am. Hosp. Ass'n v. N.L.R.B.*, 499 U.S. 606, 619 (1991). The court ignored this framework, in part, because the Order has been implemented and "Plaintiffs allege dozens of existing removals pursuant to the Order." App'x 259. But Plaintiffs did not challenge any of those individual removals under the APA. Having chosen to frame their complaint as a facial challenge to the Order, they must show that the Order is facially invalid.

It is not. As explained above, all three statutes—the Centennial Act, the Omnibus Management Act, and the National Park Service Organic Act—delegate significant discretion to the agency. None dictate the substance of any interpretive materials. None bar the Secretary from starting a process to review interpretive materials and providing guidance for that review. The district court's decision is essentially grounded in subjective disagreement over the content of government speech, not clear statutory violations:

- "These climate-related interpretive materials further the Organic Act's conservation mandate by fostering public awareness and informing visitors about environmental degradation and the threats facing protected ecosystems, landscapes, and other park resources." App'x 262.

- "NPS' interpretation and education program must incorporate marginalized voices in telling a full history." App'x 265.

- The Order "fosters alienation and disengagement by removing a source of potential connection that diverse communities could form with park resources." App'x 266-67.

- "[T]he Government's actions do exactly what they profess to counteract, dismantling objective historic truths and permanently damaging public memory." App'x 270.

These are policy judgments about government speech; these statements do not establish any inconsistency with the broad directions set forth in the NPS statutes.

The government is also likely to prevail on the merits of Plaintiffs' laundry list of APA claims because the Order reflects a policy choice concerning government speech that is not arbitrary and capricious. Among other things, Plaintiffs identified no meaningful standard for the court to apply, and they do not show that the Secretary

16

failed to consider any important consideration. Their primary objections are to the premise of the Executive and Secretary's Orders, but Plaintiffs' disagreement with the President's "policy decision" is not a basis to invalidate the order as arbitrary and capricious. *Plunkett v. Castro*, 67 F. Supp. 3d 1, 15 (D.D.C. 2014).

Plaintiffs also alleged that the government should have accounted for their reliance interests, but they cite nothing to support the premise that they have a reliance interest in particular government speech. And they fail to show any such interests or how they would suffer a hardship such that that they can no longer rely on NPS. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 31 (2020). The order reflects policy judgment and starts a process; it makes no factual findings that would be subject to challenge. Nor have Plaintiffs shown a prior policy document inconsistent with the order—there was accordingly no need for the government to explain any change in position.

## II. The injunction's overbreadth, the balance of the harms, and the equities strongly favor a stay.

All other factors strongly support a stay. The preliminary injunction goes beyond maintaining the status quo. It is an extraordinary mandatory injunction directing government speech and restructuring the government's management of the national parks. This alone warrants a stay. The injunction requires the essentially impossible task of full-site restoration within 21 days. *See* 2d Bowron Decl. ¶ 6 (App'x 281-89). And the injunction follows significant delay by Plaintiffs—they waited nine months after the Order to file this suit, and then another month before seeking an injunction. *See Benisek*

*v. Lamone*, 585 U.S. 155, 159 (2018) (lack of "reasonable diligence" weighs against granting preliminary injunction)

The injunction goes far beyond preserving the status quo. Such an injunction is a "potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests." *Charlesbank Equity Fund II* v. *Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004). "[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," and "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The district court failed to consider less burdensome alternatives. *Winter v. NRDC*, 555 U.S. 7, 24 (2008). The court could have ordered NPS to continue preserving the exhibits pending litigation without mandating full reinstallation, and then moved on to the merits. The sweeping, all-or-nothing nature of the injunction is an abuse of discretion.

The public interest and balance of the equities also warrant a stay. The injunction invades the government's exclusive statutory authority to administer national parks under the Organic Act, 54 U.S.C. § 100302(a)(3). The injunction substitutes judicial management for agency discretion, which qualifies as irreparable harm. *See, e.g.*, *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers); *see also Ramos v. Att'y Gen. United States*, No. 25-2946, 2025 WL 2950133, at *3 (3d Cir. Oct. 17, 2025) (Bove, J., concurring in denial of stay pending appeal).

The injunction also improperly compels the government to speak. It requires the display of interpretive materials against the government's choice. "Permanent

monuments displayed on public property typically represent government speech," and NPS must have the right to "speak for itself." *Summum*, 555 U.S. at 467 (cleaned up). It is "entitled to say what it wishes," *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995), and may "select the views that it wants to express," *Summum*, 555 U.S. at 467-68; *see also Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 210 (2015) (describing *Summum* as "reject[ing] the premise that the involvement of private parties in designing the monuments was sufficient to prevent the government from controlling which monuments it placed in its own public park"). The injunction contravenes these principles by compelling NPS to convey a particular interpretive message, interfering with speech rights and inflicting irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).

If Plaintiffs disagree with the content of interpretive materials, the appropriate remedy is political, not judicial. "The Constitution . . . relies first and foremost on the ballot box . . . to check the government when it speaks." *Shurtleff v. City of Bos., Mass.*, 596 U.S. 243, 252 (2022). The government is "ultimately accountable to the electorate and the political process for its advocacy," and "[i]f the citizenry objects, newly elected officials later could espouse some different or contrary position." *Summum*, 555 U.S. at 468-69 (cleaned up).

Plaintiffs' indeterminate harms do not outweigh these significant and concrete harms to the government. The district court relied on Plaintiffs' alleged "aesthetic, recreational, and informational harms," such as one member's use of "interpretive materials at park sites as a primary source of educational material for her school-aged children, including on topics such as civil rights, climate change, and slavery." App'x

271-72. But that doesn't establish the required *substantial* injury, especially where the declarant visit plans this summer are to parks *where no material has been removed.* App'x 201-02. Indeed, it is unlikely Plaintiffs have Article III standing, but at a minimum they have not established the irreparable harm necessary to support the extraordinary remedy the district court ordered. Their concerns about the alleged erasure of history— however strongly felt—do not qualify as the kind of particular, actual, imminent irreparable harm that justifies overriding the government's rights to manage the national parks and to control its own speech.

## CONCLUSION

For the foregoing reasons, the Court should grant a stay pending appeal.

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

/s/ *Robert N. Stander*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

ROBERT J. LUNDMAN
CHRISTOPHER C. HAIR
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 717-7067
June 18, 2026                          robert.stander@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 5,195 (less than 5,200) words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

/s/ *Robert N. Stander*
Robert N. Stander

Counsel for Federal Appellees

June 18, 2026