**No. 26-1714**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

National Parks Conservation Association, et al.,

Plaintiffs-Appellees,

v.

United States Department of the Interior, et al.,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
No. 26-cv-10877
The Honorable Angel Kelley

**PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL OR, ALTERNATIVELY, AN ADMINISTRATIVE STAY**

Brooke Menschel
Michael J. Torcello
Pablo A. Moraga
Steven Y. Bressler
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
T: (202) 448-9090
F: (202) 921-4875
bmenschel@democracyforward.org
mtorcello@democracyforward.org
pmoraga@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION .............................................................................................1

BACKGROUND .............................................................................................2

    I.      Congress establishes national parks as America's largest classroom. .............................................................................................2

    II.     Defendants censor history and science at national parks. .....................4

    III.    Procedural History..........................................................................6

STANDARD OF REVIEW .........................................................................8

ARGUMENT .....................................................................................................9

    I.      Defendants are not likely to succeed on the merits..............................9

        A.    The Secretary's Order is a final agency action. ..........................9

        B.    The Secretary's Order is not committed to agency discretion. ..............................................................................14

        C.    The Secretary's Order is arbitrary and capricious, contrary to law, and in excess of statutory authority...............16

    II.     Defendants suffer no harm, while a stay would irreparably injure Plaintiffs and the public. ..........................................................20

CONCLUSION.................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967)......................................................10

*Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606 (1991) ....................................................19

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................11

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83
        (D.C. Cir. 2020) .............................................................................................18

*Biden v. Texas*, 597 U.S. 785 (2022) ................................................................ 10, 11

*Bondi v. VanDerStok*, 604 U.S. 458 (2025)..............................................................19

*Cent. Tex. Tel. Coop., Inc. v. FCC*, 402 F.3d 205 (D.C. Cir. 2005).......................12

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151 (1st Cir.
        2004) ..............................................................................................................21

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ................15

*City of Philadelphia v. Sec'y U.S. Dep't of Interior*, No. 26-1348, 2026
        WL 1755493 (3d Cir. June 18, 2026).............................................. 11, 13, 15

*CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618 (1st Cir.
        1995) ..............................................................................................................23

*Comcast of Me./N.H., Inc. v. Mills*, 988 F.3d 607 (1st Cir. 2021)...........................9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799
        (2024)..............................................................................................................21

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ...................................................14

*DHS v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020)...............................................17

*Dugan v. Ramsay*, 727 F.2d 192 (1st Cir. 1984) .............................................. 15, 16

*K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907 (1st Cir. 1989)........................20

*Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150 (1st Cir. 2021)......................14

*Mich. Consol. Gas Co. v. FERC*, 883 F.2d 117 (D.C. Cir. 1989) ..........................17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)..................................................................................................................15

*NAACP v. Sec'y of HUD*, 817 F.2d 149 (1st Cir. 1987)..........................................15

*Nat. Res. Def. Council, Inc. v. Thomas*, 845 F.2d 1088 (D.C. Cir. 1988)................9

*New York v. Trump*, 133 F.4th 51 (1st Cir. 2025) ...................................................13

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ...........................................16

*R.I. State Council of Churches v. Rollins*, 158 F.4th 304 (1st Cir. 2025) .............8, 9

*Rivera-Diaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387 (1st Cir. 2014) ...............12

*Rodriguez v. Municipality of San Juan*, 659 F.3d 168 (1st Cir. 2011)....................21

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)............................................22

*Sig Sauer, Inc. v. Brandon*, 826 F.3d 598 (1st Cir. 2016) ......................................11

*Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314 (1st Cir. 2009) .....................................16

*Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019)........................................................11

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016) ................... 10, 11

*Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020)................15

*United States v. Salerno*, 481 U.S. 739 (1987)........................................................19

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ..........................................12

**Statutes**

16 U.S.C. § 21.............................................................................................................2

iii

5 U.S.C. § 551(4) ............................................................................ 12, 13

5 U.S.C. § 551(10) ..................................................................................13

5 U.S.C. § 551(13) ..................................................................................13

54 U.S.C. § 100101(a) ..........................................................................2, 14

54 U.S.C. § 100101(b) ................................................................................3

54 U.S.C. § 100701 ....................................................................................3

54 U.S.C. § 100702 ................................................................................3, 14

54 U.S.C. § 100802 ................................................................................3, 12

54 U.S.C. § 100803 ......................................................................... 3, 11, 14, 16

54 U.S.C. § 320102(k) .................................................................................2

Pub. L. No. 105-391, 112 Stat. 3497 (1998) ................................................3

Pub. L. No. 64-235, 39 Stat. 535 (1916) ....................................................2

Pub. L. No. 74-292, 49 Stat. 666 (1935) ....................................................2

## Other Authorities

*Analysis: Reporting Signs that "Disparage" American History*, Ctr. for W. Priorities (June 3, 2026), https://perma.cc/YN8F-TERM ..............................5

*History Under Construction*, Nat'l Park Serv. (Nov. 5, 2023), https://perma.cc/AQ5V-37E4 ..........................................................................4

*Our Mission*, Nat'l Park Serv. (Feb. 27, 2025), https://perma.cc/U85B-3EWE ....................................................................................................................4

*Telling All Americans' Stories: Publications on Diverse and Inclusive History*, Nat'l Park Serv. (Feb. 20, 2025), https://perma.cc/82JZ-VK7M ....................................................................................................................4

**INTRODUCTION**

Defendants-Appellants' request for a stay pending appeal asks this Court to sanction their erasure of history and science from national parks. And it asks the Court to ignore Congress's more than century-old mandate that the country's greatest collective resource strive to share scientific truths, tell the fullest American story, and reflect the colorful tapestry of this nation. Defendants' arguments are breathtaking in their repudiation of any legal accountability. According to Defendants, the Secretary's Order directing a wholesale revision of a statutorily mandated education program is too general to challenge, but changes implementing that Order are too specific. Instead, Defendants argue they are effectively free to ignore Congress's mandate that information at national parks be grounded in high-quality scientific and historical learning and attentive to the perspectives and stories of all people. If accepted, Defendants' position would render courts powerless to correct such egregious oversteps.

The district court did not abuse its discretion in rejecting that position and granting interim relief. The Order easily constitutes reviewable final agency action: following its dictates, National Park Service staff have targeted hundreds of interpretive materials detailing environmental impacts on treasured national sites; both the contributions and oppression of formerly enslaved people and Indigenous groups; and the impact of transformative social movements. Plaintiffs are likely to

show Defendants' actions violate the Administrative Procedure Act ("APA") several times over, and Defendants face no harm from ceasing their unlawful actions, while Plaintiffs and the public would be irreparably harmed by a stay. And there is no "emergency" here: the district court found that Defendants could comply with its timeline but expressly allowed them to seek tailored exemptions.

Defendants are not entitled to a stay.

## BACKGROUND

### I. Congress establishes national parks as America's largest classroom.

Since Congress established Yellowstone as the first national park "for the benefit and enjoyment of the people" in 1872, 16 U.S.C. § 21, the parks have served as America's largest classroom, expanding to more than 400 areas that cover historic landmarks, natural wonders, sacred grounds, and sites of great triumphs and devastating tragedies.

Congress created the National Park Service through the Organic Act of 1916, entrusting it to steward the parks "for the enjoyment of future generations." Pub. L. No. 64-235, § 1, 39 Stat. 535, 535 (amended and recodified at 54 U.S.C. § 100101(a)). Congress established a Park Service education program aimed at publicizing history in 1935, Pub. L. No. 74-292, § 2(j), 49 Stat. 666, 667 (amended and recodified at 54 U.S.C. § 320102(k)), and has repeatedly reaffirmed its importance since. In 1970, Congress declared the parks shall be "managed for the

benefit and inspiration of all the people of the United States," 54 U.S.C. § 100101(b)(1)(C)), and it reaffirmed that principle in 1978, *id.* § 100101(b)(2).

Through the 1998 National Parks Omnibus Management Act, Congress further required that the Interior Secretary "shall continually improve the ability of the National Park Service to provide state-of-the-art . . . interpretation of and research on the resources of the National Park System." Pub. L. No. 105-391, § 101, 112 Stat. 3497, 3498 (amended and recodified at 54 U.S.C. § 100701). That act provides: "The Secretary shall ensure that management of [National Park] System units is enhanced by the availability and utilization of a broad program of the highest quality science and information." 54 U.S.C. § 100702.

In the 2016 National Park Service Centennial Act, Congress required that the Secretary "ensure that management of System units and related areas is enhanced by the availability and use of a broad program of the highest quality interpretation and education." *Id.* § 100802. The Secretary is authorized to "undertake a program of regular evaluation of interpretation and education programs to ensure that they . . . reflect different cultural backgrounds, ages, education, gender, abilities, ethnicity, and needs" and "current scientific and academic research." *Id.* § 100803(2), (4).

Today, the Park Service enlists approximately 13,000 permanent employees, who serve 332 million visitors annually, to preserve "unimpaired the natural and cultural resources and values of the National Park System for the enjoyment,

3

education, and inspiration of this and future generations." *Our Mission*, Nat'l Park Serv. (Feb. 27, 2025), https://perma.cc/U85B-3EWE. The Park Service provides interpretive materials—including exhibits, signs, brochures, and books—that lend context to each park site and allow visitors to connect to their surroundings. App. 89–90.

Until recently, the Park Service "strive[d] to tell the stories of all Americans," *Telling All Americans' Stories: Publications on Diverse and Inclusive History*, Nat'l Park Serv. (Feb. 20, 2025), https://perma.cc/82JZ-VK7M, and to "share an accurate and comprehensive history" that includes "the good, the bad, the ugly, and everything in between," *History Under Construction*, Nat'l Park Serv. (Nov. 5, 2023), https://perma.cc/AQ5V-37E4. The Secretary's Order challenged here brought that statutorily grounded mission to a halt.

## II.    Defendants censor history and science at national parks.

In March 2025, President Trump issued Executive Order 14253, "Restoring Truth and Sanity to American History." App. 74. Two months later, Secretary Burgum issued Secretary's Order 3431, aimed at "implement[ing] provisions" of the Executive Order. App. 77. The Secretary's Order ("Order") directed the Park Service to, within 90 days, review "all public monuments, memorials, statues, markers, or similar properties" at parks

> to identify whether any such properties contain images, descriptions, depictions, messages, narratives or other information (content) that

> inappropriately disparages Americans past or living (including persons living in colonial times), or, with respect to content describing natural features, that emphasizes matters unrelated to the beauty, abundance, or grandeur of said natural feature.

*Id.* § 5(b)(1). The Order required the Park Service to, within 120 days, "remove any content" that "inappropriately disparages Americans . . . [or] emphasizes matters unrelated to the beauty, abundance, or grandeur" of a "natural feature" or is otherwise "inconsistent with the purposes of" the Executive Order. *Id.* § 5(b)(2); *see id.* § 5(a)(3) (requiring Park Service to "immediately undertake such actions as are necessary to reinstate" properties altered since January 1, 2020, for allegedly improper reasons). In place of removed materials, the Order directs the Park Service to install "content that focuses on the greatness of the achievements and progress of the American people or, with respect to natural features, the beauty, abundance, and grandeur of the American landscape, and is otherwise consistent with" the Executive Order. *Id.* § 5(b)(2).[1]

Park Service staff began removing disfavored materials in summer 2025 and subsequently "instituted various internal efforts to speed up removals, leading to a significant escalation in early 2026." App. 230–31. By February 2026,

---

[1] Section 6 of the Order directed the Park Service to solicit input from visitors about noncompliant signs. A sampling of those comments revealed that "opposition to the sign removal order [was] near-unanimous, at 99.9 percent." *Analysis: Reporting Signs that "Disparage" American History*, Ctr. for W. Priorities (June 3, 2026), https://perma.cc/YN8F-TERM.

Defendants had removed interpretive materials "related to climate change, civil rights, and diverse communities"; "involving slavery, abolition, immigration, labor, [and] women's suffrage"; and "dedicated to Native Tribes and describing the atrocities committed to their communities." App. 231–33; *see* App. 233–36 (materials discussing similar topics flagged for removal). In March 2026, a leaked database revealed hundreds of additional items that have been flagged. App. 236.[2]

### III.    Procedural History

Plaintiffs—a coalition of organizations and their members committed to protecting national parks, preserving and sharing history, promoting access to high-quality scientific information, and providing high-quality interpretive materials at parks—sued in February 2026 and filed an amended complaint and motion for preliminary relief in March 2026, alleging that the Order and its implementation violate the APA. Defendants opposed Plaintiffs' motion and moved to dismiss.

The district court denied Defendants' motion. The court first concluded that Plaintiffs had sufficiently demonstrated organizational and associational standing. App. 195–205. The court then held that the Order was "a final agency action"—and ripe for review—because it was "the consummation of a decision-making process"

---

[2] *E.g.*, App. 231 (removal of exhibits describing environmental degradation at endangered Fort Sumter); App. 233 (removal of exhibits explaining significance of Cadillac Mountain to Wabanaki people at Acadia National Park); App. 235 (flagging of exhibits honoring Emmett Till and his mother, created "in collaboration" with Till family, at Emmett Till and Mamie Till-Mobley National Monument).

that imposed "legal obligations on [agency] personnel." App. 206, 208. The court rejected Defendants' argument that the Order was committed to agency discretion, explaining that "[t]he concepts of public education, environmental conservation, intellectual discourse, scientific rigor, and diversity are not foreign to courts and provide an intelligible guidepost for review." App. 212–13. On the merits, the court held that Plaintiffs sufficiently stated a claim. App. 214–16.

Shortly thereafter, the court granted Plaintiffs' motion for preliminary relief, reiterating that Defendants' threshold jurisdictional, final agency action, and agency discretion arguments likely fail. App. 239–41. The court determined the Order was arbitrary and capricious because it lacked any reasoned explanation, disregarded substantial reliance interests, and ignored important aspects of the problem. App. 241–57. Further, Plaintiffs showed the Order likely violates at least three statutes governing interpretation and education in the parks. App. 257–70. The equitable factors also favored Plaintiffs because "the risk of harm to [Plaintiffs] and their members" was "immediate and irreparable," and "preliminary injunctive relief would serve the public interest by forcing Defendants to abide by their existing statutory duties." App. 271, 275. Conversely, Defendants' passing reference to administrative burdens was unpersuasive because "the requested relief would not prohibit Defendants from making all changes to the park sites; it would only prevent the implementation of [the Secretary's] Order." App. 275–76.

7

The district court issued a § 705 stay and enjoined Defendants from further implementing Section 5 of the Order. App. 279. The court ordered Defendants to "restore and reinstall all interpretive materials at park sites managed by the NPS that, pursuant to the Secretary's Order, have been altered, removed, or damaged in the process of such removal since May 20, 2025."

Defendants moved for a stay pending appeal on June 15. On the court's order, App. 290, Defendants filed a report detailing removals and the status of their compliance with the court's § 705 order, App. 292. The district court denied Defendants' stay motion, rejecting their claim that compliance would be impossible and clarifying that "Defendants may seek limited extensions or exemptions from the Injunction Order, as needed, for specific interpretive material[s]." App. 359.

## STANDARD OF REVIEW

"A stay pending appeal is an intrusion into the ordinary processes of administration and judicial review, so this extraordinary relief is never granted as a matter of right." *R.I. State Council of Churches v. Rollins*, 158 F.4th 304, 311 (1st Cir. 2025) (citation modified). Defendants "bear[] the burden of justifying the extraordinary relief [they] request[]" by making "(1) a strong showing that [they are] likely to succeed on the merits; (2) a showing that [they] will be irreparably injured absent a stay; (3) a showing that the issuance of the stay will not substantially injure

8

the other parties interested in the proceeding; and (4) a showing that the public interest lies with [them]." *Id.* (citation modified).

This Court "will uphold a decision to grant" preliminary relief "unless it constitutes an abuse of discretion," reviewing factual findings for clear error and legal conclusions de novo. *Comcast of Me./N.H., Inc. v. Mills*, 988 F.3d 607, 611 (1st Cir. 2021).

## ARGUMENT

### I.    Defendants are not likely to succeed on the merits.

Defendants make no "strong showing" they are likely to succeed on the merits; that alone warrants denial of their motion. *See R.I. State Council*, 158 F.4th at 312.

### A. The Secretary's Order is a final agency action.

The Secretary's Order is "the consummation of a decision-making process, not interlocutory or tentative." App. 206. Section 5 of the Order establishes standards for reviews and reports that the Park Service "shall conduct" and "shall provide"; circumstances where the Park Service "shall immediately undertake such actions as are necessary to reinstate" materials; and criteria and a timetable under which the Park Service "shall remove" and replace any content found to violate the Order. These directives provide "marching orders" for Park Service "subordinate employees." *Nat. Res. Def. Council, Inc. v. Thomas*, 845 F.2d 1088, 1094 (D.C. Cir.

9

1988). The Order "is not a preliminary step far upstream of any consequences." App. 208.

Defendants protest that the Order leaves room for subsequent implementation, but the mere need for "judgment calls," Mot. 10, in applying an agency directive does not render that agency action non-final. Directives to agency staff, like the Order, are final where they require agency personnel to conduct specific actions, even if those actions involve additional steps. *See Biden v. Texas*, 597 U.S. 785, 808–09 (2022); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (possibility of revising agency statement is a "common characteristic of agency action, and does not make an otherwise definitive decision nonfinal"); *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 150–51 (1967) (discussing agency actions deemed final where rule "could properly be characterized as a statement only of [the agency's] intentions"; agency pronouncement "would have effect only if and when a particular action was brought"; and agency announced policy "even though no specific application was before [it]").

Defendants assert that agency action is final only if it "affect[s] a third party's rights or obligations and results in legal consequences for third parties." Mot. 11. The Order does affect the public's rights, as discussed below, but Defendants misstate the law. In *Biden*, for example, both the majority and lead dissent referenced "the agency's final determination of its employees' obligation" when discussing

10

finality, rather than relying on legal consequences to third parties, as Defendants suggest. 597 U.S. at 809 n.7; *id.* at 833 (Alito, J., dissenting) (memoranda not final because they "did not impose on DHS officers or employees any obligation" (citation modified)); *see also Texas v. EEOC*, 933 F.3d 433, 445 (5th Cir. 2019) ("whether the agency action binds the *agency* indicates whether legal consequences flow from that action"); *City of Philadelphia v. Sec'y U.S. Dep't of Interior*, No. 26-1348, 2026 WL 1755493, at *13 n.9 (3d Cir. June 18, 2026) (claim involved Park Service's "legal rights and obligations" where statute mandated that Park Service "produce and disseminate appropriate educational materials"). As in *Biden*, the Order creates obligations for agency employees: it "imposes legal obligations on [agency] personnel, who must review interpretive materials at park sites, post QR codes, and remove purportedly violative materials." App. 208. The Order thus "alter[s] the legal regime to which the action agency is subject." *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

In any event, the Order mandates a process resulting in legal consequences that directly affect the parties. *See Hawkes*, 578 U.S. at 598; *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 600 n.1 (1st Cir. 2016). Despite statutory requirements, Plaintiffs and their members can no longer enjoy interpretive materials that reflect "different cultural backgrounds, ages, education, gender, abilities, ethnicity, and needs" or "current scientific and academic research." 54 U.S.C. § 100803(2), (4).

11

And they can no longer enjoy parks "enhanced by the availability and use of a broad program of the highest quality interpretation and education." *Id.* § 100802. Because of the Order, Plaintiffs and their members have lost benefits they enjoyed when Defendants complied with their statutory obligations. *See generally* App. 82–187.[3]

Separately, Defendants claim the Order is not "agency action" at all. Mot. 8–9. Defendants did not raise this argument in the district court, and "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." *Rivera-Diaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 391 (1st Cir. 2014) (citation omitted).

Regardless, the Order is agency action. "[A]ction" under the APA "cover[s] comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). That includes a "rule," "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). The Order easily fits within this "broad definition," *Cent. Tex. Tel. Coop., Inc. v. FCC*, 402 F.3d 205, 211 (D.C. Cir. 2005), because it prescribes new

---

[3] Defendants' stay motion does not contest Plaintiffs' standing, which partially rests on these injuries.

agency policy for interpretation in the parks and establishes procedural requirements for agency personnel.[4]

This case does not concern "general judicial review" of agency operations. Mot. 9 (citation omitted). Agency action "appl[ying] some particular measure across the board . . . can of course be challenged under the APA." *New York v. Trump*, 133 F.4th 51, 67–68 (1st Cir. 2025) (citation omitted). Defendants claim any judicial review of individual decisions about specific materials must proceed "case-by-case," Mot. 12, but in the Third Circuit they recently argued—and that court agreed— individualized decisions were not final agency action. *See Philadelphia*, 2026 WL 1755493, at *11–13; *Philadelphia*, Dkt. 33 at 31–33 (3d Cir. Mar. 27, 2026). If Defendants had their way, then, the Order and its implementation could never be reviewed for compliance with congressional mandates concerning the parks or the APA's procedural requirements. Congress does not lightly exempt agencies from judicial review in such wholesale fashion and did not do so here.[5]

---

[4] If the Order is not a "rule," it constitutes "the equivalent . . . thereof" under § 551(13).

[5] Defendants' broader reliance on *Philadelphia* is misplaced. The government there rightly conceded that this case "involves different statutes, different agency action, and different legal theories." *Philadelphia*, Dkt. 110 at 1 (3d Cir. June 16, 2026); *contra* Mot. 7 (describing the cases as "similar"). Plaintiffs here challenge a rule under 5 U.S.C. § 551(4) or § 551(13); Philadelphia challenged an individual removal under § 551(10). The cases also involve different legal claims, and Plaintiffs here—unlike Philadelphia—do not assert contractual or property rights.

13

## B. The Secretary's Order is not committed to agency discretion.

Nor is this the rare case where action is committed to agency discretion. The APA carries a "strong presumption of judicial review." *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 170 (1st Cir. 2021) (citation modified). The committed-to-agency-discretion exception is "quite narrow[], restrict[ed] . . . to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (citation omitted).

But Defendants' discretion here *is* restrained. Congress provided clear and specific directives to "ensure" that parks' interpretation and education programs "reflect different cultural backgrounds" and "current scientific and academic research" and that parks are "enhanced by the availability and utilization of a broad program of the highest quality science and information," 54 U.S.C. §§ 100803(2), (4), 100702, and to leave the parks' "scenery" and "natural and historic objects" "unimpaired for the enjoyment of future generations," *id.* § 100101(a). These statutes embody "environmental and conservation mandates that provide clear standards against which to assess the Secretary's Order." App. 211.

Defendants argue these "generically worded statutes" lack judicially manageable standards. Mot. 13. But generality does not render statutory standards unmanageable, as *Philadelphia* illustrates: the court held that while a statutory

14

requirement to "produce and disseminate appropriate educational materials" conferred discretion, "the term 'appropriate' means that NPS's discretion is not boundless." 2026 WL 1755493, at *13 n.9 (citing "reasonable, practicable and appropriate" as administrable standards in *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 33–34, 46 (1983)); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 411 (1971) ("prudent" provided meaningful standard). And even where a statutory standard "may be difficult to apply to borderline instances," "a court should be able to determine a clear failure to live up to the instruction over time." *NAACP v. Sec'y of HUD*, 817 F.2d 149, 158 (1st Cir. 1987) (drawing standard from requirement that HUD "'administer' its programs 'in a manner affirmatively to further the policies' of 'fair housing'" (citation omitted)). That is what the district court did here.

The "broad discretion" these statutes confer does not foreclose judicial review either. Mot. 13. That a statute may leave "a great deal of discretion to the agency" does not "make actions taken pursuant to it unreviewable." *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 19 (1st Cir. 2020); *see also Dugan v. Ramsay*, 727 F.2d 192, 195 (1st Cir. 1984) ("that an agency enjoys broad discretionary powers does not mean judicial review is forbidden"). Congress provided clear instructions for interpretation and education in the parks; "there is no reason to believe Congress

15

wished or needed to preclude review of unlawful action in order to carry out [those] statutory objective[s]." *Dugan*, 727 F.2d at 195.

Defendants' misguided government speech argument—first raised in a stay motion after the district court issued its opinion—goes nowhere. On Defendants' account, the relevant statutes do not "require NPS to present particular narratives or maintain specific signage." Mot. 14. But Congress did not hand the Park Service a blank check to ignore, in an educational program, scientific or historical content it dislikes. *See, e.g.*, 54 U.S.C. § 100803 (requiring interpretation and education programs that "reflect different cultural backgrounds"). And Defendants cannot hide behind the "government speech" label to avoid compliance with the APA. *See, e.g.*, *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 331 n.9 (1st Cir. 2009) (government speech may be limited "by law, regulation, or practice" (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 468 (2009))).

## C. The Secretary's Order is arbitrary and capricious, contrary to law, and in excess of statutory authority.

Defendants scarcely defend the Order on the merits. As the district court comprehensively explained, the Order is arbitrary and capricious because it failed to "identify[] the relevant factual or legal context that it seeks to disrupt," App. 243; abandoned longstanding Park Service practices without justification, while failing to recognize or even consider substantial reliance interests, App. 248–54; failed to consider important aspects of the problem, including the interests of the public, App.

254–56; and ignored evidence that the discarded interpretive materials "are accurate and high quality," App. 256.

Defendants mischaracterize Plaintiffs' challenge as a disagreement with the President's "policy decision." Mot. 17 (citation omitted). They ignore that when the Secretary implemented the general policies in the Executive Order, he was required to follow the APA. Labeling the Secretary's Order a "policy" matter does not exempt it from the requirements of reasoned decisionmaking and compliance with governing statutes when implementing the policy.

Defendants' remaining arguments are equally unpersuasive. They assert Plaintiffs failed to show any reliance interests, *id.*, but do not dispute the threshold point that they shirked their duty to consider reliance interests at all, *see DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 33 (2020). And they flatly ignore the district court's extensive factual findings of significant reliance interests at stake. App. 248–54. Defendants also claim there is no "prior policy document" inconsistent with the Order, Mot. 17, but the record shows, and the district court found, that the Park Service "has both in policy and in conduct engaged in a prior practice of telling a whole history," App. 249–50; *see Mich. Consol. Gas Co. v. FERC*, 883 F.2d 117,

17

122 (D.C. Cir. 1989) (agency's actions may be established through "past decisions" (citation omitted)).[6]

The Order also exceeds statutory authority and is contrary to several laws governing the Park Service. The Order "directly conflicts" with the Organic Act's conservation mandate because it directs the removal of climate-related interpretive materials "without identifying any conservation-related justification." App. 262. The Order violates the Centennial Act because its "erasure of the struggles, lives, and stories of various marginalized communities directly denies the importance of the Centennial Act's mandate that park sites reflect the voices of all Americans." App. 266. For "substantially similar reasons," the Order violates the Omnibus Management Act by "mandating the removal" of topics such as climate change and environmental degradation. App. 269–70.

Defendants do not grapple with the district court's statutory analysis, arguing instead that the court ruled based on "policy judgments." Mot. 16. That charge is baseless: the district court thoroughly examined the text and purpose of all three statutes. *See, e.g.*, App. 261 (in Organic Act, "Congress intended that the NPS prioritize environmental conservation"); App. 263 (Centennial Act "unambiguously requires the NPS to incorporate diverse viewpoints into its interpretation and

---

[6] The form of the prior policy is immaterial. *See Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020) ("Agency action generally need not be committed to writing to be final and judicially reviewable.").

18

education program"); App. 269–70 (Omnibus Management Act "directs the NPS to incorporate contemporary scientific research into interpretive materials at park sites"). Defendants fail to refute the district court's conclusion—based on the unrebutted record—that the Order violates these statutory mandates.

Nor must Plaintiffs show the Order is contrary to law in all its applications. *Contra* Mot. 15. Courts have not extended that standard, which derives from *United States v. Salerno*, 481 U.S. 739 (1987), beyond *Salerno*'s "narrow factual context, where the plaintiffs brought a constitutional challenge to a federal statute that had yet to be implemented at all," and instead have "declined to apply *Salerno* to APA claims." App. 258 (collecting cases); *see Bondi v. VanDerStok*, 604 U.S. 458, 496 (2025) (Thomas, J., dissenting) (if "no-set-of-circumstances" were the standard, "it is difficult to understand how an agency would ever promulgate an invalid" regulation). And *American Hospital Ass'n v. NLRB*, 499 U.S. 606 (1991), does not pronounce the rule Defendants suggest: the court rejected an arbitrary-and-capricious challenge where the agency conducted a "careful analysis of the comments that it received," provided a "well-reasoned justification for the new rule," and would "likely" consider the hypothetical presented an exception to the rule. *Id.* at 618–19.

Even if *Salerno* were the correct standard, Plaintiffs satisfy it. Before the district court, Defendants claimed the Order was not invalid in all its applications

because some sub-agencies covered by the Order are not subject to the Park Service–related statutes. Dkt. 31-1 at 22–25. But the district court tailored its order to only the Park Service. App. 278. So Defendants have not actually identified any legitimate applications of the (unlawful) Order.

## II. Defendants suffer no harm, while a stay would irreparably injure Plaintiffs and the public.

Defendants fail to demonstrate that they will suffer irreparable harm absent a stay, or that the district court abused its discretion in balancing harms. *See K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989) ("District courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief." (citation omitted)). At bottom, the district court's order requires Defendants to (1) stop violating the law; (2) correct earlier violations; and (3) keep the court apprised of their progress. Defendants gloss over the first and third categories entirely.[7] And they provide hardly any support for their assertion that compliance with the restoration order is "essentially impossible," Mot. 17—a claim the district court did not credit after carefully evaluating Defendants' submissions, App. 353–54 ("[I]f Defendants move promptly to restore the interpretive materials, they can meaningfully comply with the Court's Order.").

---

[7] Thus, even if this Court determines a stay is warranted, any stay should not extend to these portions of the district court's order.

Defendants' compliance objections are particularly unpersuasive because the district court permitted them to seek "limited extensions or exemptions"—an invitation that Defendants have ignored. App. 359. While Defendants say the district court failed to consider "less burdensome alternatives" to the relief it ordered, Mot. 18, they never proposed any. *See Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) ("[W]e deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument."). In any event, the relief ordered is appropriate based on the district court's conclusion that Plaintiffs are likely to succeed on their APA claims and face irreparable harm absent relief. *Cf. Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated— not that their application to the individual petitioners is proscribed." (citation omitted)).[8]

---

[8] Defendants' imprecise government speech arguments, Mot. 18–19, fail for the reasons described above. And Defendants' suggestion that Plaintiffs engaged in "significant delay," Mot. 17, is misdirection. The district court found that Defendants "significantly expanded removal efforts in early 2026, increasing both the magnitude of harm and urgency for relief," and Plaintiffs sought preliminary relief shortly thereafter. App. 273; *see Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) (delay detracts from claimed irreparable harm only if it is "not attributable to intervening events"). That factual finding was not clearly erroneous.

Defendants' irreparable harm arguments rest on the mistaken premise that it was improper for the district court to enforce statutes that govern the Park Service. *See* Mot. 18–19. But providing high-quality interpretive materials is required by laws passed through the very "political process" Defendants invoke. Mot. 19. And Defendants suffer no harm from an injunction that ends an unlawful practice. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Conversely, Plaintiffs, their members, and the public have already suffered and will continue to suffer far-reaching irreparable harm from the Order, as the district court correctly recognized. App. 270–74. A stay pending appeal would exacerbate those harms, which include aesthetic, recreational, and informational injuries; harms to their relationships and reputations; lost income; redirected resources and forgone business functions; and obstacles to accomplishing their organizational missions.[9] These concrete, imminent harms—detailed extensively in the record and cataloged in the district court's order—are hardly "indeterminate" or mere "concerns." *Contra* Mot. 19–20.

The public, too, would suffer if the district court's order is stayed, since "the public ultimately bears the brunt of Defendants' actions," as visitors "look to the National Park system to learn and enhance their understanding of history, science,

---

[9] *E.g.*, App. 93–96, 105–09, 121–23, 136–39, 152–56, 164–67, 172–75, 183–86.

and this Nation." App. 275. Restoring the materials Defendants unlawfully removed is necessary both to "preserve the status quo," *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995), and to ensure "that by sharing the full story—with the full historical narrative, including perspectives and experiences that have traditionally been stifled—future generations of our country will be empowered to make more informed choices, thereby making our Nation stronger and better," App. 358.

## CONCLUSION

The Court should deny Defendants' motion for a stay pending appeal or administrative stay.

June 22, 2026

Respectfully submitted,

*/s/ Brooke Menschel*

Brooke Menschel
Michael J. Torcello
Pablo A. Moraga
Steven Y. Bressler
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
T: (202) 448-9090
F: (202) 796-4426

*Counsel for Plaintiffs-Appellees*

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Opposition to Defendants-Appellants' Emergency Motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the opposition contains 5,186 words. The opposition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word version 16 in proportionally spaced 14 point Times New Roman typeface.

*/s/ Brooke Menschel*
Brooke Menschel

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, I electronically filed the foregoing Opposition to Defendants-Appellants' Emergency Motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Brooke Menschel*
Brooke Menschel
