No. 26-1714

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NATIONAL PARKS CONSERVATION ASSOCIATION; AMERICAN
ASSOCIATION FOR STATE AND LOCAL HISTORY; ASSOCIATION OF
NATIONAL PARK RANGERS; COALITION TO PROTECT AMERICA'S
NATIONAL PARKS; SOCIETY FOR EXPERIENTIAL GRAPHIC
DESIGNERS; and UNION OF CONCERNED SCIENTISTS,
*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in
his official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; and
JESSICA BOWRON, in her official Capacity as the Official Exercising the Delegated
Authority of the Director,
*Defendants-Appellants*

Appeal from the United States District Court for the District of Massachusetts
No. 1:26-cv-10877 (Hon. Angel Kelley)

**FEDERAL DEFENDANTS/APPELLANTS' REPLY IN SUPPORT OF
THEIR EMERGENCY MOTION FOR STAY PENDING APPEAL OR,
ALTERNATIVELY, AN ADMINISTRATIVE STAY**

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*
ROBERT J. LUNDMAN
CHRISTOPHER C. HAIR
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 717-7067
robert.stander@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION ......................................................................................... 1

ARGUMENT .................................................................................................. 3

I.  Federal Defendants are likely to succeed on the merits. ............................. 3

    A.  The Order is not agency action. ...................................................... 3

    B.  The Order is not final. .................................................................... 4

    C.  What the government says to the public in national parks
       about America is committed to agency discretion by law. .................... 7

    D.  The Order is lawful. ......................................................................... 7

II.  The injunction's overbreadth, the balance of the harms, and the
    equities strongly favor a stay. .................................................................... 9

CONCLUSION ............................................................................................. 10

CERTIFICATE OF COMPLIANCE ........................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967).................................................................................... 5

*Bennett v. Spear*,
  520 U.S. 154 (1997)................................................................................ 4, 5

*Biden v. Texas*,
  597 U.S. 785 (2022).................................................................................... 5

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973).................................................................................... 6

*City of Philadelphia v. Secretary of the Interior*,
  No. 26-1348, --- F.4th ---, 2026 WL 1755493 (3rd Cir. June 18, 2026) .........2, 3, 4, 5

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984).................................................................................... 7

*Commonwealth of Puerto Rico v. United States*,
  490 F.3d 50 (1st Cir. 2007)......................................................................... 4

*Indep. Equip. Dealers Ass'n v. EPA*,
  372 F.3d 420 (D.C. Cir. 2004) ..................................................................... 3

*Nat'l Ass'n of Soc. Workers v. Harwood*,
  69 F.3d 622 (1st Cir. 1995)..................................................................... 4, 10

*Norton v. Southern Utah Wilderness Alliance*,
  542 U.S. 55 (2004)................................................................................... 1, 6

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) .......................................................................... 10

*U.S. Army Corps of Engineers v. Hawkes Co.*,
   578 U.S. 590 (2016) ............................................................................ 5

*Union of Concerned Scientists v. Wheeler*,
   954 F.3d 11 (1st Cir. 2020) ................................................................ 7

*U.S. ex rel. Sargent v. Collins*,
   165 F.4th 102 (1st Cir. 2026) ............................................................ 4

## Statutes

5 U.S.C. § 551(4) ................................................................................... 3

5 U.S.C. § 551(13) ................................................................................. 3

5 U.S.C. § 701(a)(2) .............................................................................. 7

5 U.S.C. § 702 ....................................................................................... 4

5 U.S.C. § 705 ....................................................................................... 2

54 U.S.C. § 100101(a) ........................................................................... 7

54 U.S.C. § 100802 ............................................................................... 7

54 U.S.C. § 100803 ............................................................................... 7

## INTRODUCTION

If the Secretary of the Interior instructed a national park ranger to write a speech for tourists at Yellowstone that extolled America's beauty and did not disparage Americans, neither the instruction nor the ranger's speech would constitute reviewable final agency action. It would instead constitute unreviewable "day-to-day agency management" and the government's own speech to the public. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 67 (2004). And it would make no difference if, instead of a live speech, the speech were written on a plaque. Here, the Secretary directed subordinates to review written material presented in national parks to ensure it does not "inappropriately disparage" Americans. The Secretary's order to agency staff is no more final agency action than a request to draft a speech.

The absence of APA review makes perfect sense, moreover, because courts have no business censoring the Executive Branch's communication to the public about America in national parks. Disagreement over government speech presents "abstract policy disagreements which courts lack both expertise and information to resolve." *Id.* Plaintiffs' arguments to the contrary should be rejected.

Even if review were available, the Secretary's directive to ensure that no interpretive materials inappropriately disparage Americans cannot possibly have violated any of the three broadly worded statutes requiring the "highest quality" interpretive materials. None of the statutes has any judicially enforceable standard, and

certainly none is violated by removing materials that inappropriately disparage Americans.

As for the equities, Plaintiffs have no serious excuse for their delay in suing and in moving for a preliminary injunction. The real reason for delay is likely that they suffer no cognizable injury from their annoyance over the government posting new plaques in visitor centers. Meanwhile, the district court has commandeered the Executive Branch's communications with the public, ordering it to reinstall the speech of the prior administration within three weeks. This Court should follow the Third Circuit's decision in *City of Philadelphia v. Secretary of the Interior* and stay the injunction.[1] If the Court denies the stay, it should extend the administrative stay for 30 days to provide for orderly Supreme Court review and, if necessary, compliance.[2]

---

[1]    Before vacating the injunction in *City of Philadelphia*, No. 26-1348, --- F.4th ---, 2026 WL 1755493 (3rd Cir., June 18, 2026), the Third Circuit stayed it in part and ordered NPS to make no changes to the President's House Site pending appeal. Because the mandate has not yet issued, there is currently a stay-put order in place prohibiting NPS from changing the President's House. To avoid conflict with the Third Circuit's order, this Court should (at minimum) stay the district court's order in full as to the President's House.

[2]    Defendants understand the administrative stay under 5 U.S.C. § 705 to maintain the status quo and prohibit implementation of the Order. But Defendants need not restore or reinstall interpretive materials or submit status reports on those efforts. And the stay does not preclude either installation of new interpretive materials that do not replace materials pursuant to the Order or alteration of materials for reasons unrelated to the Order.

## ARGUMENT

### I.    Federal Defendants are likely to succeed on the merits.

#### A.    The Order is not agency action.

The government is likely to prevail because the Order is not "agency action" subject to APA review. 5 U.S.C. § 551(13). It is an internal directive about how to conduct day-to-day decisions concerning content displayed at national parks. *City of Philadelphia*, 2026 WL 1755493, at *11; *see* Mot. at 8-9.

Plaintiffs' only substantive argument (p.12) is that the Order is a "rule." That is incorrect. The APA defines a rule as an "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" 5 U.S.C. § 551(4). Even if broad, this definition is not broad enough to authorize review over every generalized statement with potential future effect. *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004). The relevant part of the definition focuses on the legal effect of the challenged conduct on third parties— whether the action imposes obligations or affects the legal rights of third parties or is instead "legally insignificant." *Id.* at 427.

Here, the announcement of editorial sideboards on interpretive materials is legally insignificant for two reasons. First, Plaintiffs have no rights to particular interpretive materials. An interpretive sign's presence or absence therefore has no legal impact on Plaintiffs. Second, adjustments to interpretive materials are the types of day-to-day operational decisions that are excluded from APA review. Mot. at 8-9. Lacking

"agency action," judicial review is foreclosed. *City of Philadelphia*, 2026 WL 1755493, at *11.

Plaintiffs are also wrong (p. 12) that this issue is not properly before the Court. The APA waives sovereign immunity to "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702; *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57 (1st Cir. 2007). Sovereign immunity is a jurisdictional issue that cannot be waived. *U.S. ex rel. Sargent v. Collins*, 165 F.4th 102, 107 (1st Cir. 2026). Moreover, the government made this argument below as part of its final agency action argument. *See* Dkt. 31-1 at 15-16. Regardless, this Court should consider this important argument on appeal. *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 628 (1st Cir. 1995).

### B.    The Order is not final.

The Order also flunks the APA's finality requirement because it consummates no decision-making process and has no direct legal consequences on Plaintiffs or any other third parties. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); Mot. at 9-13.

Plaintiffs are incorrect that the Order consummates the agency's decision-making process. Opp'n at 10. Unlike the cases they cite, the Order *starts* a discretionary review process, and that process requires agency employees to apply their judgment—as well as any park-specific statutes and law, *see City of Philadelphia,* 2026 WL 1755493, at *2-4—before deciding to change (or not change) interpretive content. Mot. at 9-10. Plaintiffs' alleged harm illustrates this point—to the extent they are harmed, such harm results from downstream site-specific decisions, not the Order.

That lack of consummation was fatal to plaintiff's claim in *City of Philadelphia* because the evolving nature of NPS's interpretive materials in the President's House

4

made it unlikely that "the exhibit removal six months ago was NPS's last word on the matter." 2026 WL 1755493, at *13. Plaintiffs' final-agency-action arguments here relied on the district court decision in *City of Philadelphia* (Dkt. 29-1 at 13; Dkt. 48 at 5), and the court here considered the case a "parallel action," App'x 220. The Third Circuit has now reached the opposite conclusion and vacated the opinion on which the district court and Plaintiffs relied.

The Order also fails the second *Bennett* requirement because it determines no legal rights or obligations of any third party, or any other agency, or Plaintiffs, who have no rights to particular government speech. Mot. at 10-12. Here, Plaintiffs challenge only the Order; they eschew any challenge to downstream decisions. *See* Opp'n to D. Ct. Stay at 5 (Dkt. 48) ("Plaintiffs do not challenge an individual sign removal[.]"). The Order does not determine the legal rights of third parties in contrast to the agency actions in the cases cited by Plaintiffs. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (noting that even though the Corps' determination could be revised, that contingency did not render nonfinal an otherwise definitive decision affecting a party's rights); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 150 (1967) (concluding that the challenged agency regulations had "the force of law"); *Biden v. Texas*, 597 U.S. 785, 808-09 (2022) (concluding that the challenged memoranda terminated an immigration program with legal consequences for certain aliens); *Bennett*, 520 U.S. at 169-70 (Interior's biological opinion imposed legal consequences on a separate agency, "the action agency").

Plaintiffs argue that the Order imposes requirements on NPS personnel. Opp'n at 11. But if that were enough to establish finality, every internal directive would create

5

binding legal obligations subject to judicial review. Plaintiffs' unbounded interpretation would make reviewable virtually anything an agency head says to employees. This could even include a directive from the Secretary requiring the use a particular font on all NPS signs or single-sided printing for all pamphlets. The APA does not require this absurd result, unmoored to any legal rights and obligations of a plaintiff or a third party. And as for legal consequences, Plaintiffs speak only of abstract "benefits" and "enjoyment" of NPS interpretive resources. Opp'n at 11-12. Enjoying an interpretive sign or losing the opportunity to enjoy such a sign is not a legal consequence or a determination of rights and obligations.

In sum, Plaintiffs and the district court would inappropriately transform the courts into "roving commissions" assessing NPS signs, brochures, and other interpretive materials at more than 400 different park units. *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973). The APA limits judicial review to final agency action in order to "protect agencies from undue judicial interference with their lawful discretion[ ] and . . . avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton*, 542 U.S. at 66. We cannot say it better than the Supreme Court: the APA does "not contemplate[]" judicial review of claims that "the Secretary had failed . . . to 'manage the New Orleans Jazz National Historical Park in such a manner as will preserve and perpetuate knowledge and understanding of the history of jazz,' or to 'manage the Steens Mountain Cooperative Management and Protection Area for the benefit of present and future generations.'" *Id.* at 67 (brackets omitted).

### C.    What the government says to the public in national parks about America is committed to agency discretion by law.

Judicial review is also unavailable under the APA because the Order is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Plaintiffs do not dispute that courts are normally hesitant to question the management of national parks. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984). And there is "no meaningful standard" against which to judge the Secretary's exercise of discretion here. *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020).

Plaintiffs assert that there are "clear and specific directives" in the statutes. Opp'n at 14. They claim—contrary to the statutory text—the Secretary *must* ensure that park programs "reflect different cultural backgrounds," are of the "highest quality," and provide for the "enjoyment of future generations." But the Centennial Act is permissive, not mandatory, when it provides that the Secretary "*may* undertake a program" to ensure that educational programs reflect different backgrounds. 54 U.S.C. § 100803. Further, these are plainly subjective and aspirational standards, not clear directives that a court can or should police. Plaintiffs identify no tools of statutory construction that can meaningfully guide judicial review of whether particular materials are of the "highest quality" or are "adjust[ed] to how people learn and engage with the natural world." *Id.*

### D.    The Order is lawful.

Even if the Order were reviewable, Plaintiffs cannot show that reviewing signs for content that "perpetuate[s] a false reconstruction of American history" (App'x 79)

7

or "inappropriately disparages Americans" (App'x 80) violates any statute. For one thing, no statute requires NPS to disparage Americans or perpetuate false historical narratives. For another, the statutory language is plainly broad and discretionary. The statutes direct the Secretary to "enhance[]" the national parks with a "program of the highest quality interpretation," 54 U.S.C. § 100802, or "to conserve the scenery, natural and historic objects," 54 U.S.C. § 100101(a). Because the Order's no-disparagement and no-false-history directives are perfectly consistent with these statutes, Plaintiffs are essentially arguing that NPS officials will misapply the Order by taking actions that are inconsistent with the NPS statutes. But speculation about misapplying the Order is not a basis for facially invalidating the Order itself.

Nor does the APA require more of the Secretary. Plaintiffs swing between critiquing the Order, which just sets a process and guidelines for review, and critiquing the alleged failure to explain particular sign removals that they do not challenge, but rely on anyway. But even assuming that a particular park unit removed a sign and had an obligation to address reliance interests and justify its decision, that would not demonstrate an APA flaw *in the Order*. And it plainly would not justify nationwide relief, forcing NPS to return to the government speech of the prior administration. Plaintiffs' relief, if available at all, should be limited to prohibiting NPS's reliance on the Order, not the rescission of individualized actions not squarely challenged.

While Plaintiffs have focused on signs and written materials, their APA-review theory would just as readily reach guided presentations by park rangers. If a ranger changed his presentation, that would presumably necessitate a fulsome explanation and consideration of reliance interests of park visitors. That is plainly absurd; the APA does

8

not provide for such expansive judicial review, and it should not matter whether the government speech is presented orally or in writing.

Regardless, Plaintiffs fail to support their "reliance interests" with any specificity. They simply point to the district court's *ipse dixit* on the matter. Opp'n at 17. Plaintiffs also do not establish that the Order conflicts with prior NPS practice based on any purported prior practice of telling the "whole story" in interpretive materials. *Id.*

## II. The injunction's overbreadth, the balance of the harms, and the equities strongly favor a stay.

All other factors strongly support a stay. The injunction requires the essentially impossible task of nationwide restoration within 21 days. Even Plaintiffs did not request such a burdensome deadline—they requested 45-days. Proposed Order (Dkt. 29-2). Plus there is a mismatch between what Plaintiffs have challenged—the Secretary's Order—and the injunction, which requires NPS to undo actions Plaintiffs have expressly *not* challenged.

Plaintiffs note the possibility of "limited" extensions or exemptions. Opp'n at 21 (citing App'x 359). This ad hoc approach is unworkable because of the (unjustified) nationwide scope of the relief and its timing. The 21-day timing here is especially unwarranted when considering Plaintiffs' ten-month delay in seeking injunctive relief. Plaintiffs now blame "expanded" 2026 removals (p.21 n.8), yet their supporting declarations complain of none, App'x 82-187. That alone warrants a stay.

Moreover, Plaintiffs' non-existent harm stems from a purported attempt to "censor history" (p.4), but the Order *itself* does not require the removal of any interpretive materials, much less censor anyone's speech. Indeed, the district court's

9

censorship rationale is Orwellian, as the court has now censored the speech of the Executive Branch. Plaintiffs sought and the district court entered an order forcing the government to return to the prior administration's viewpoint about the meaning of America. And that seems to be exactly the point of this lawsuit. But it is well-settled that the government is free to "select the views that it wants to express[.]" *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009). Plaintiffs suggest Defendants have waived any government speech argument (Opp'n at 16), but Defendants preserved the issue in opposing the injunction's overbreadth and interference with executive management. Mot. to Dismiss at 29-30 (Dkt. 31-1). And regardless, this Court should consider this important issue. *Nat'l Ass'n of Soc. Workers*, 69 F.3d at 628. Because the government must be free to control its own speech, the equities support a stay here.

## CONCLUSION

For all these reasons, the Court should grant a stay pending appeal.

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

/s/ *Robert N. Stander*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

ROBERT J. LUNDMAN
CHRISTOPHER C. HAIR
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 717-7067
June 24, 2026                     robert.stander@usdoj.gov

10

## CERTIFICATE OF COMPLIANCE

1.       This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 2,590 (less than 2,600) words.

2.       This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

/s/ *Robert N. Stander*
Robert N. Stander

Counsel for Federal Appellees

June 24, 2026