# United States Court of Appeals
## For the First Circuit

_____

No. 26-1714

NATIONAL PARKS CONSERVATION ASSOCIATION; AMERICAN ASSOCIATION FOR STATE AND LOCAL HISTORY; ASSOCIATION OF NATIONAL PARK RANGERS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; SOCIETY FOR EXPERIENTIAL GRAPHIC DESIGN; UNION OF CONCERNED SCIENTISTS,

Plaintiffs - Appellees,

v.

U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in the official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; JESSICA BOWRON, in the official capacity as the Official Exercising the Delegated Authority of the Director,

Defendants - Appellants.

_____

Before

Barron, <u>Chief Judge</u>,
Gelpí and Rikelman, <u>Circuit Judges</u>.

_____

**ORDER OF COURT**

Entered: July 2, 2026

Before us is a motion to stay a district court order entered on behalf of several organizations that are suing to challenge an "order" that the U.S. Secretary of the Interior issued regarding interpretive materials at public sites managed by the National Park Service. The plaintiffs allege that the Secretary's order is arbitrary and capricious, not in accordance with law, and in excess of statutory authority, in violation of the Administrative Procedure Act ("APA"). <u>See</u> 5 U.S.C. § 706(2)(A), (C). The movants, defendants-appellants U.S. Department of the Interior; Doug Burgum, in the official capacity as U.S. Secretary of the Interior; National Park Service; and Jessica Bowron, in the official capacity as the Official Exercising the Delegated Authority of the Director of the National Park Service (collectively, "the Department"), seek a stay of the district court's June 12, 2026 Memorandum and Order granting a 5 U.S.C. § 705 stay of the challenged agency "order" and other preliminary injunctive relief.

On June 23, 2026, we granted in part the Department's separate request for an administrative stay pending resolution of its stay motion. We noted at that time that we would promptly address the pending stay motion. We now grant that motion.

## I.

On March 27, 2025, President Trump issued Executive Order 14253, titled "Restoring Truth and Sanity to American History" (the "Executive Order"). 90 Fed. Reg. 14563 (Mar. 27, 2025). As relevant here, the Executive Order directed the U.S. Secretary of the Interior (the "Secretary") to review all "public monuments, memorials, statues, markers, or similar properties" within the jurisdiction of the U.S. Department of the Interior and "take action, as appropriate and consistent with applicable law, to ensure that" they "do not contain descriptions, depictions, or other content that inappropriately disparage Americans past or living (including persons living in colonial times), and instead focus on the greatness of the achievements and progress of the American people or, with respect to natural features, the beauty, abundance, and grandeur of the American landscape." Id. at 14564.

Two months later, on May 20, 2025, the Secretary issued Secretary's Order 3431, "Restoring Truth and Sanity to American History" (the "Secretary's Order"), with the express purpose of "implement[ing] provisions of [the Executive Order]." Sec'y of the Interior Order No. 3431, Dep't of the Interior, 2025 WL 1517953, at *1 (May 20, 2025). Section 5 of the Secretary's Order directed the National Park Service to, within 90 days, conduct the review mandated by the Executive Order to "identify whether any [interpretive materials] contain images, descriptions, depictions, messages, narratives or other information (content) that inappropriately disparages Americans past or living (including persons living in colonial times), or, with respect to content describing natural features, that emphasizes matters unrelated to the beauty, abundance, or grandeur of said natural feature." Id. at *3. The Secretary's Order further directed that any "content meeting the criteria identified . . . or otherwise found to be inconsistent with the purposes of [the Executive Order]" was to be removed and replaced with "content that focuses on the greatness of the achievements and progress of the American people or, with respect to natural features, the beauty, abundance, and grandeur of the American landscape, and is otherwise consistent with [the Executive Order]." Id. at *4.

In June 2025, National Park Service employees were instructed to conduct the reviews mandated by the Secretary's Order and submit their findings to a review team. A review team consisting of National Park Service senior management from various directorates, representatives from the U.S. Department of the Interior Office of Communications, and others began analyzing the submissions. The review team reviews all submissions to determine whether the content conforms with the Secretary's Order. If content is found to be nonconforming, the relevant National Park Service unit is notified and implements next steps, which may include revision, temporary removal until replacement content is developed, or permanent removal. As a result of these efforts, by early 2026, the National Park Service had removed or flagged hundreds of interpretive materials from park sites, including materials addressing climate change, slavery,

abolition, immigration, labor, women's suffrage, civil rights, and the culture and mistreatment of indigenous groups.

In February 2026, six organizations -- National Parks Conservation Association, American Association for State and Local History, Association of National Park Rangers, Coalition to Protect America's National Parks, Society for Experiential Graphic Design, and Union of Concerned Scientists (together, the "plaintiffs") -- filed an action in the U.S. District Court for the District of Massachusetts under the APA claiming that the Secretary's Order constituted a final agency action that is arbitrary and capricious, as well as contrary to law and in excess of statutory authority under the National Park Service Centennial Act, 54 U.S.C. §§ 100801-100803; the National Park Service Organic Act, id. § 100101; and the National Parks Omnibus Management Act, id. §§ 100701-100702.[1] See 5 U.S.C. § 706(2)(A), (C). The plaintiffs later filed a motion for a stay of the Secretary's Order under 5 U.S.C. § 705 and other preliminary relief.

The district court granted the plaintiffs' motion, concluding that they were likely to succeed on the merits of their aforementioned claims and that the equities favored preliminary relief. Specifically, it stayed the Secretary's Order pursuant to 5 U.S.C. § 705, issued a universal preliminary injunction barring further implementation of section 5 of that order, and ordered the Department to restore and reinstall by July 3, 2026, all interpretive material at the public sites managed by the National Park Service that had been altered, removed, or damaged pursuant to the Secretary's Order. The Department moved for a stay of the district court's order pending appeal, which the district court denied. The Department then filed in this court the motion for a stay of the district court's order that is now before us.

## II.

"'A stay is an intrusion into the ordinary processes of administration and judicial review' and is not granted as 'a matter of right.'" Washington v. U.S. Dep't of Housing & Urban Dev., 171 F.4th 473, 488 (1st Cir. 2026) (quoting Nken v. Holder, 556 U.S. 418, 427 (2009)). As the party seeking a stay, the Department bears the burden of showing that the circumstances justify such "extraordinary relief" under Nken's four-factor test: (1) whether the Department "has made a strong showing that it is likely to succeed on the merits of its appeal;" (2) whether "it will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." New York v. Kennedy, 155 F.4th 67, 72 (1st Cir. 2025) (citation modified) (quoting Nken, 556 U.S. at 426). "The first two factors 'are the most critical.'" Id. (quoting Nken, 556 U.S. at 434). Our review accounts for the district court's discretion to grant preliminary injunctive relief, see Planned Parenthood Fed'n of Am., Inc. v. Kennedy, 162 F.4th 155, 166 (1st Cir. 2025), and we see no reason not to do the same in reviewing a § 705 stay.

---

[1] The plaintiffs also allege that the Secretary's Order is contrary to law and in excess of statutory authority under the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1701, et seq., and contrary to law, in excess of statutory authority, and not in accordance with procedure under the Paperwork Reduction Act, 44 U.S.C. § 3501, et seq. The plaintiffs did not rely on these claims in their motion for preliminary relief, so they are not before us in this stay motion.

**III.**

With respect to the first <u>Nken</u> factor, the Department advances several challenges to the district court's assessment of the merits of the plaintiffs' relevant APA claims.  It contends that it is likely to succeed in showing on appeal that the Secretary's Order is not reviewable under the APA because it is not an agency action within the meaning of that statute, <u>see</u> 5 U.S.C. §§ 551(13), 701(b)(2); it is not final, <u>see</u> <u>id.</u> § 704; <u>Bennett</u> v. <u>Spear</u>, 520 U.S. 154, 177-78 (1997); and it is committed to agency discretion, <u>see</u> 5 U.S.C. § 701(a)(2).

In the alternative, but still with respect to the first <u>Nken</u> factor, the Department argues that it is likely to succeed in showing on appeal that the terms of the Secretary's Order do not conflict with the National Park Service Centennial Act, 54 U.S.C. §§ 100801-100803; the National Park Service Organic Act, <u>id.</u> § 100101; or the National Parks Omnibus Management Act, <u>id.</u> §§ 100701-100702.  On that basis, the Department contends that the plaintiffs therefore are not likely on appeal to meet their burden to show that the Secretary's Order is "not in accordance with law" and "in excess of statutory . . . authority."  5 U.S.C. § 706(2)(A), (C).

The Department further contends as to the first <u>Nken</u> factor that it is likely to succeed in showing on appeal that the district court incorrectly determined that the Secretary's Order is likely arbitrary and capricious.  That is so, the Department argues, because the Secretary's Order is not a change in longstanding policy warranting consideration of reliance interests, and, in any event, the plaintiffs have not demonstrated any reliance interests in any particular interpretive materials.

Even if the plaintiffs are likely to succeed in showing that the Secretary's Order is a "final agency action" that is reviewable under the APA, we do not need to resolve the stay motion's serious contentions that the plaintiffs are unlikely to prevail on their APA claims on appeal to determine whether the Department can satisfy the first <u>Nken</u> factor.  That is so because we conclude that the Department has made a strong showing that it is likely to succeed on the merits on appeal because the district court erred in determining that the plaintiffs likely would suffer irreparable harm absent the preliminary relief at issue.  <u>See</u> <u>Together Emps.</u> v. <u>Mass Gen. Brigham Inc.</u>, 32 F.4th 82, 85-86 (1st Cir. 2022).

Irreparable harm is a prerequisite for preliminary injunctive relief of the sort that the plaintiffs sought from the district court.  <u>See</u> <u>id.</u>; <u>Matos ex rel. Matos</u> v. <u>Clinton Sch. Dist.</u>, 367 F.3d 68, 73 (1st Cir. 2004).  We note, too, that 5 U.S.C. § 705 authorizes reviewing courts to "issue all necessary and appropriate process to postpone the effective date of an agency action" "<u>to prevent irreparable injury</u>" pending judicial review.  (Emphasis added.)

The plaintiffs had the "burden of demonstrating that a denial of interim injunctive relief would cause irreparable harm squarely upon [them]," <u>Ross-Simons of Warwick, Inc.</u> v. <u>Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996), and that "irreparable injury is <u>likely</u> in the absence of an injunction," <u>Winter</u> v. <u>Nat. Res. Def. Council</u>, 555 U.S. 7, 22 (2008).  Neither party appears to

contend that a party seeking interim relief under § 705 bears a different burden to show the requisite "irreparable injury."  "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."  Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) (citing In re Rare Coin Galleries of Am., Inc., 862 F.2d 896, 902 (1st Cir. 1988)).  The Department has made a strong showing that the record does not support the district court's determination that the plaintiffs met their burden to show that they likely face such injury.

In support of their motion for a § 705 stay and other preliminary injunctive relief, the plaintiffs argued that they likely would suffer irreparable harm absent interim relief because the Secretary's Order frustrates their organizational missions; harms their reputations; impairs their relationships with their members; and reduces participation in their activities, leading to loss of income and goodwill.  Several plaintiffs also alleged that that their members would likely suffer irreparable harm.

The district court appears to have relied on the organizations' and their members' "alleged aesthetic, recreational, and informational harms" in finding that the plaintiffs had made the required showing of irreparable harm.  But, to meet their burden to show the requisite irreparable harm, the plaintiffs asserted aesthetic, recreational, and informational harms only to their members, not to themselves.  And, although the plaintiffs submitted numerous declarations to support their motion, those declarations alleged specific (rather than general) "aesthetic, recreational, and informational harms" only to one member.

The district court's finding of irreparable harm relies on that one member's use of "interpretive materials at park sites as a primary source of educational material for her school-aged children, including on topics such as civil rights, climate change, and slavery."  The district court also accepted the plaintiffs' contention that the member could "no longer rely on the park sites for their pedagogical value" "[w]ithout the interpretive materials" and found that this amounted to a loss of educational opportunity that was sufficient to show irreparable harm.

As the Department points out, however, the plaintiffs do not allege that any material has yet been removed from the parks that the member identifies as the ones that she has specific plans to visit this summer.  Further to that point, the Department submitted a declaration from Jessica Bowron, Comptroller of the National Park Service exercising the authority delegated to the Director of the National Park Service, stating that no changes have been made to interpretive material at those parks, even though such material at those parks had been submitted for review under the Secretary's Order.  And the member otherwise identified by name only parks that she "hope[s] to bring [her] daughters to" "someday."

More broadly, the district court found that the removal of interpretive materials "constitutes government-sanctioned erasure and rejection of [people's] histories," "strips the sites of the context that gives them meaning," and "degrades the public's trust in the government," and that these consequences also constitute irreparable harm.  But this determination is not sufficiently connected

to any specific harms likely to be experienced by the plaintiffs because of the Secretary's Order. In addition, while any finding of harm to the public generally is relevant to the fourth factor of the injunction standard, it is not relevant to the question of whether the plaintiffs likely showed that they would suffer irreparable harm absent the requested preliminary relief, see CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 622 (1st Cir. 1995) ("[T]he issuance of a preliminary injunction requires a showing of irreparable harm to the movant rather than to one or more third parties.").

The plaintiffs did identify other harms on which the district court did not rely in issuing the challenged relief.  But, we note, the plaintiffs do not appear to have shown how those harms are traceable to the Secretary's Order.  See MediNatura, Inc. v. Food & Drug Admin., 998 F.3d 931, 945 (D.C. Cir. 2021) (holding that movant was not entitled to preliminary injunctive relief because it "did not demonstrate that any harm it is suffering is directly traceable to the [challenged agency action]"); Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d 803, 819 (9th Cir. 2018) ("[T]he [alleged] irreparable harm must be causally connected to the activity to be enjoined . . . ."). For example, the plaintiffs do not explain how their claims of mission frustration, diversion of resources from core functions, and postponement of long-term projects are linked to specific directives in the Secretary's Order or specific actions taken to implement it.  Similarly, claims that the Secretary's Order has chilled expression and undermined professions and professional reputations rest on inferences and extrapolations without reference to the specific provisions in the Secretary's Order.  And the claims that some plaintiffs have seen reduced membership or participation because their members fear that associating with the organizations will cause them to be perceived as opposing the current presidential administration or National Park Service policies amount to "speculation about the unfettered choices made by independent actors," Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 383 (2024) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)), without evidence connecting them to the Secretary's Order itself.

In any event, for the reasons we have explained, the Department has made a strong showing that the harms that the district court relied on to support its finding that the plaintiffs carried their burden of demonstrating that they were likely to suffer irreparable harm absent the interim relief likely do not provide that support.  Accordingly, the Department is likely to succeed on the merits of its appeal, see Matos, 367 F.3d at 73, and so has satisfied the first Nken stay factor.

The remaining stay factors set forth in Nken concern whether the Department "will be irreparably injured absent a stay," "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and "where the public interest lies."  Nken, 556 U.S. at 426 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).  Here, the entry of an unsupported order staying the enforcement and enjoining implementation of the challenged agency directive constitutes a form of irreparable injury.  See District 4 Lodge of the International Association of Machinists & Aerospace Workers Local Lodge 207 v. Raimondo, 18 F.4th 38, 47 (1st Cir. 2021). And the injunction further directs the Department to undertake a burdensome reinstallation and restoration project in short order.  On the other side of the ledger, for reasons related to those we have set forth above in addressing the issue of whether the plaintiffs have met their burden to show

irreparable harm from the Secretary's Order, the plaintiffs cannot show that a stay of the district court's order, if it is not likely to survive on appeal, would cause them substantial injury. Given the Department's likelihood of success on the merits, the public interest factor here does not itself require denial of the stay.

Accordingly, because the Department has met its burden, we **grant** its motion for a stay of the district court's June 12, 2026 Memorandum and Order pending appeal.

By the Court:

Anastasia Dubrovsky, Clerk

cc:
Hon. Angel Kelley
Robert Farrell, Clerk, United States District Court for the District of Massachusetts
Steven Y. Bressler
Robin F. Thurston
Michael J. Torcello
Pablo Moraga
Brooke Menschel
Donald Campbell Lockhart
Abraham R. George
Christopher Hair
Robert Nolan Stander
Megan Corrigan
Samuel Dinning